HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES J. JEREMIAH,

    Plaintiff,

  v.

CITY OF REDMOND, et al.,

    Defendants.

CASE NO. C12-1071RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment. Plaintiff did not oppose the motion. For the reasons stated below, the court GRANTS the motion (Dkt. # 99) and directs the clerk to enter judgment for Defendants.

## II.  BACKGROUND

Plaintiff James Jeremiah, proceeding without the assistance of an attorney, has sued the City of Redmond, its Mayor, and several of its employees in the wake of an incident in which he reported vandalism of a Redmond residence that he shared with Charles Petri. To summarize his suit, the court attempts to decipher Mr. Jeremiah's 58-page complaint. Dkt. # 9. The court does not suggest that any of the factual assertions in the complaint are true, it merely attempts to summarize them to give context to its later analysis.

ORDER – 1

1    Mr. Jeremiah alleges that after a dispute over the location of exercise equipment,
2 Mr. Petri physically threatened him.  When Mr. Jeremiah demanded that Mr. Petri leave,
3 Mr. Petri allegedly sprayed the residence's electrical outlets with a household cleaner.
4    Mr. Jeremiah called the police on June 12, 2009.  Redmond Police Department
5 ("RPD") Officer Steve Lincoln responded to the call.  Mr. Jeremiah is dissatisfied with
6 Officer Lincoln's handling of the call for a variety of reasons.  He alleges, among other
7 things, that Officer Lincoln improperly refused to arrest Mr. Petri, that he was dismissive
8 of Mr. Jeremiah's complaints, and that he improperly investigated the vandalism.
9    In the days that followed, Mr. Jeremiah gave various statements to Officer
10 Lincoln.  He also made several appearances at the RPD's offices, where he spoke with
11 Dawn Sellers, an employee in the RPD records department.  Mr. Jeremiah was also
12 dissatisfied with Ms. Sellers, who he contends treated him rudely.
13    Unhappy with RPD's response, Mr. Jeremiah turned to Larry Mitchell, a
14 prosecutor for the City of Redmond.  Mr. Jeremiah was dissatisfied with Mr. Mitchell's
15 response as well.  Among other things, Mr. Mitchell declined to bring charges against
16 Mr. Petri.  That led Mr. Jeremiah to send written complaints about Mr. Mitchell (and
17 perhaps others) to Redmond's Mayor, John Marchione.  Mr. Jeremiah's complaints about
18 the conduct of Officer Lincoln, Ms. Sellers, and Mr. Mitchell have continued.  He has
19 attempted to convince the City and RPD to investigate his complaints.  Again, he has
20 been dissatisfied with their response.
21    In June 2012, Mr. Jeremiah sued the City, Mayor Marchione, Officer Lincoln, Ms.
22 Sellers, Mr. Mitchell, and Shawn Fitzpatrick.  Ms. Fitzpatrick supervises Ms. Sellers.  He
23 claims to have stated sixteen causes of action, including racial discrimination in violation
24 of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, conspiracy to violate § 1983, a conspiracy in
25 violation of 42 U.S.C. § 1985, conspiracy in violation of 42 U.S.C. § 1986, violations of
26 the Washington Constitution, violations of various Washington criminal statutes,
27 defamation, violation of the state-created-danger doctrine under the Fourteenth
28 ORDER – 2

Amendment, and various forms of negligence, including negligent training of Redmond employees. He contends that the City and its policymakers are liable, via § 1983, for policies and practices that caused violations of his constitutional rights, including policies relating to the training of RPD employees. He also claims that Officer Lincoln and Ms. Sellers are liable for negligent infliction of emotional distress and the tort of outrage.

Every Defendant has now moved for summary judgment on all of Mr. Jeremiah's claims.

### III.   ANALYSIS

On motions for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.   Although There is No Evidence That Mr. Jeremiah Properly Served the Individual Defendants, the Court Declines to Dismiss His Claims on That Basis.**

At the outset, the individual Defendants (not the City) ask the court to conclude that there is no evidence that Mr. Jeremiah personally served them in accordance with Federal Rule of Civil Procedure 4(e). Their assertion is correct. The evidence shows that the individual Defendants received the summons and complaint only after Mr. Jeremiah (or an associate) delivered copies of them to an RPD records department employee on

ORDER – 3

November 30, 2012. There is no evidence that the employee was authorized to accept service for anyone; she merely passed the documents on to the individual Defendants as a courtesy. Mr. Jeremiah's attempt at service does not comply with Rule 4(e). The court could dismiss Mr. Jeremiah's claims against the individual Defendants for improper service, but the court declines to do so. A dismissal for improper service is generally without prejudice, and a court must at least consider granting additional time to effect service in a case like this one, where dismissing the suit would mean that the plaintiff could not file a new suit in time to comply with the statute of limitations. *See*, *e.g.*, *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009); *United States v. 2,164 Watches*, 366 F.3d 767, 772-73 (9th Cir. 2004); *Mann v. Am. Airlines*, 324 F.3d 1088, 1091 (9th Cir. 2003). In this case, the court prefers to address the merits of Mr. Jeremiah's claims. The court thus turns to the remainder of the motion for summary judgment.

**B.    Defendants Have Shifted the Burden to Mr. Jeremiah to Provide Evidence to Support His Claims.**

Defendants have not offered their own evidence (other than evidence demonstrating that none of the individual Defendants have been served with process) to support summary judgment. Instead, they have reviewed Mr. Jeremiah's complaint (Dkt. # 9), determined what facts are essential to each of his claims, and stated that Mr. Jeremiah has no evidence to prove those facts. Rule 56 permits that approach. Fed. R. Civ. P. 56(c)(1)(B) (permitting a party to support an assertion that a fact cannot be genuinely disputed by "showing . . . that an adverse party cannot produce admissible evidence to support the fact"); *see also Celotex*, 477 U.S. at 325 (explaining that a party moving for summary judgment may discharge its burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case") (internal quotation omitted).

ORDER – 4

The court will not repeat Defendants' analysis of each of Mr. Jeremiah's claims. It suffices to observe that for each of them, they pointed out critical facts requiring evidentiary support. Mr. Jeremiah thus had an obligation to present evidence to support each of those facts. He did not meet that burden, because he did not oppose the summary judgment motion.

### C. Mr. Jeremiah Refused to File an Opposition to the Summary Judgment Motion.

The court prefers not to treat the summary judgment motion as unopposed, but Mr. Jeremiah has left the court with no choice. Defendants filed their motion on May 13, 2013, properly noting it for June 7. Mr. Jeremiah's response was due on June 3. The docket reflects no response from Mr. Jeremiah on that date or on any other date. On June 5, the court issued an order staying this action pending resolution of the unopposed summary judgment motion. Dkt. # 110. Mr. Jeremiah then moved for reconsideration of that order, contending that he was never served with the summary judgment motion. The court denied that motion on June 28, in an order that explained why it could not credit Mr. Jeremiah's assertion that he was not served with the motion. Dkt. # 121. On July 17, Mr. Jeremiah filed a document (Dkt. # 117) in which he insisted that he had filed an opposition to the motion on June 3, and that the court had simply failed to docket his opposition. To that document he attached the first page of what purported to be a 25-page "RESPONSE & MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT." On July 29, the court issued an order (Dkt. # 127) explaining that it had confirmed that the Clerk of Court had no record of receiving that document from Mr. Jeremiah. It also observed that Mr. Jeremiah had not pointed out his June 3 opposition to the summary judgment motion in any of numerous documents he had filed addressing the summary judgment motion. Nonetheless, the court ordered Mr. Jeremiah to file a complete copy of his June 3 opposition by August 1, and renoted the summary judgment motion for August 7. Mr. Jeremiah did not file his opposition to the

ORDER – 5

summary judgment motion. Instead, on August 1, he filed a document in which he explicitly refused to file a copy of his June 3 opposition and accused the court of concealing the document. Dkt. # 128. There is no merit to Mr. Jeremiah's accusation that the court (or its staff) has concealed his June 3 opposition. But even if the court had "concealed" the June 3 opposition, the court gave Mr. Jeremiah an opportunity to simply refile the document. He rejected that opportunity. The court will therefore treat the summary judgment motion as unopposed.

### D.  Defendants Are Entitled to Summary Judgment.

A court considering an unopposed summary judgment motion is authorized to treat an assertion of fact from the moving party as undisputed. Fed. R. Civ. P. 56(e)(2). Once it does so, it may grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3). The court cannot grant summary judgment "by default," it must instead "determine the legal consequences" of the facts it deems undisputed. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Ultimately, it will suffice if the court reviews the summary judgment motion and grants it on its merits. *Id.* at 917-918.

The court will not consider each of Mr. Jeremiah's claims in detail. Some of them would fail regardless of his failure to offer evidence to support them. There is, for example, no private right of action to sue for damages for violations of the Washington Constitution. *Reid v. Pierce County*, 961 P.2d 333, 342-43 (Wash. 1988). He cannot file a civil suit for violations of Washington's criminal laws. He cannot overcome the absolute immunity afforded to Mr. Mitchell, as a prosecutor, for his decision not to charge Mr. Petri. *See Imbler v. Pachtman*, 424 U.S. 409, 421-24 (1976). His claim invoking § 1986, which has a one-year statute of limitations, is untimely.

Other claims fail because they lack the evidence necessary to support them. His claims based on racial discrimination fail because there is no evidence, beyond the fact that Mr. Jeremiah is African-American, that anyone discriminated against him. He has

ORDER – 6

no evidence of a violation of his right to procedural due process or of a violation of his right to substantive due process via the state-created-danger doctrine. *See Hanigan v. City of Kent*, No. C06-176JLR, 2006 U.S. Dist. LEXIS 89489, at *9-13 (W. D. Wash. Dec. 8, 2006) (reviewing state-created-danger doctrine). His claims invoking § 1983 and § 1985, which allege that the Defendants conspired to deprive him of his constitutional rights, fail not only because there is no evidence of a violation of constitutional rights, but because there is no evidence of a conspiracy. He cannot prove that the City of Redmond or its policymakers are responsible for policies or customs that caused deprivations of his constitutional rights because he has no evidence of those deprivations. He has not described, much less provided evidence of, "extreme and outrageous" conduct that would support a claim for outrage. *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002); *Steinbock v. Ferry County Pub. Util. Dist. No. 1*, 269 P.3d 275, 282 (Wash. Ct. App. 2011) (affirming dismissal of outrage claim, recognizing that trial court must serve a "gatekeeping role" in determining what qualifies as outrage). As to his claim for negligent infliction of emotional distress, he has no proof of objective symptoms. *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998) (requiring emotional distress "susceptible to medical diagnosis and provable through medical evidence"). He has no proof of negligent conduct, either on behalf of the Defendants with whom he acted or on behalf of the Defendants who supervised them.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the Defendants' motion for summary judgment (Dkt. # 99) and directs the clerk to enter judgment for Defendants.

Dated this 4th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7